**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Benjamin G.,[1]

Plaintiff,

v.

Frank Bisignano,
*Commissioner of Social Security Administration*,

Defendant.

Case No. 25-cv-3961 (DJF)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Benjamin G. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("DIB") ("Decision"). Plaintiff challenges the Administrative Law Judge's ("ALJ") assessment of his mental impairments and mental residual functional capacity. He asks the Court to vacate and reverse the Decision, or in the alternative, remand this matter to the Commissioner for a new hearing. (ECF No. 1.) The Commissioner asks that the Decision be affirmed in its entirety. (ECF No. 15.) This matter is before the Court on the parties' briefs.[2] For the reasons given below, the Court affirms the Decision.

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2] The parties consented to have the undersigned United States Magistrate Judge conduct all proceedings in this case, including entry of the final judgment.

## BACKGROUND

### I. Plaintiff's Claim

Plaintiff applied for DIB on June 24, 2023, with an alleged disability onset date of January 1, 2021. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 179-80.)[3] At that time he was a 30-year-old man. (R. 31.) Plaintiff served in the United States Air Force from 2010 to 2017. (R. 181.) After that, he worked as a brewer and owned a brewery. (R. 292.) He was in the process of selling the brewery when he appeared for his administrative hearing. (R. 44.) Plaintiff alleged he was disabled due to major anxiety depressive disorder, degenerative disc disease in the cervical spine at C4 to C5, chronic sprain instability in his left ankle after surgery, and instability in his left knee after surgery. (R. 302.)

### II. Regulatory Background

An individual is considered disabled for purposes of DIB if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, an individual is disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are

[3] The Social Security administrative (R.) is filed at ECF No. 10. For convenience and ease of reference, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). At step one, the claimant must establish that he is not engaged in any "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). The claimant must establish at step two that he has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 404.1520(a)(4)(iii).[4] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing his residual functional capacity ("RFC") and proving he cannot perform any past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves he is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v).

[4] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R. Part 404, Subpart P, App. 1.

## III. Relevant Procedural History

An ALJ held a hearing on Plaintiff's application on August 26, 2024. (R. 37-59.) An attorney represented Plaintiff during the hearings, and Plaintiff and a vocational expert ("VE") testified. (*Id.*) After the hearing, the ALJ considered whether Plaintiff was disabled from January 1, 2021, the alleged disability onset date, through September 18, 2024, the date of the Decision. The ALJ issued her Decision on June 11, 2024. (R. 15-32.)

Plaintiff's appeal concerns his mental impairments. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20-23.) Plaintiff challenges that conclusion relative to listings 12.04, 12.06, and 12.07.

The ALJ found that Plaintiff has the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except with frequent climbing of ramps/stairs; never climbing ladders/rope/scaffolds; frequent stooping, kneeling, and crouching; occasional crawling; no exposure to environmental hazards; occasional overhead reaching bilaterally, with no other reaching restrictions; can understand, remember, and carry out simple instructions; can engage in occasional interaction with coworkers, supervisors, and the public; and involving occational [sic] changes in a routine work setting.

(R. 23.)

At step five, relying on the VE's testimony, the ALJ found there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. (R. 31-32.) The ALJ thus concluded that Plaintiff was not disabled during the relevant period. (*Id.*)

## DISCUSSION

## I. Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*,

228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* But a court determining whether evidence is substantial must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At a minimum, the ALJ must build a logical bridge between the evidence and the RFC she creates. She does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create

a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II. Analysis

Plaintiff appeals: (1.) the ALJ's step three conclusion that Plaintiff's mental impairments do not meet or medically equal a listing; and (2.) the ALJ's mental RFC assessment. Based on review of the parties' arguments and the ALJ's Decision, the Court affirms the Decision for the reasons below.

### A. Step Three Determination

At step three of the sequential analysis, the ALJ considered whether Plaintiff's mental impairments singly or in combination met or medically equaled the criteria of listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders) or 12.07 (somatic symptom and related disorders). (R. 20-23.) To satisfy the listings, a claimant's mental disorder must satisfy either: (1) paragraph A and paragraph B of the respective listing; or (2) paragraph A and paragraph C of the respective listing.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2). To satisfy paragraph B, the mental impairments must result in either an extreme limitation of one or a marked limitation of two of the following areas of mental functioning: (1) understanding, remembering, or apply information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04(B), 12.06(B) 12.07(B). Paragraph C is satisfied "when there is a medically documented history of the existence of the mental disorder in the listing category over a period of at least 2 years, and evidence shows that [the claimant's] disorder satisfies both C1 and

[5] Because listing 12.07 does not have a paragraph C, a claimant satisfies the listing 12.07 criteria only if he meets the requirements of both paragraph A and paragraph B. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2).

C2." *Id.* § 12.00(G)(2)(a). "The criterion in C1 is satisfied when the evidence shows that [the claimant] rel[ies], on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [the claimant's] mental disorder." *Id.* § 12.00(G)(2)(b). "The criterion in C2 is satisfied when the evidence shows that, despite [the claimant's] diminished symptoms and signs, [the claimant has] achieved only marginal adjustment." *Id.* § 12.00(G)(2)(c).

The ALJ considered whether Plaintiff's impairments satisfied the criteria of paragraphs B and C in over two pages of careful and thorough analysis. (R. 20-23.) She concluded that Plaintiff had mild limitations in understanding, remembering or applying information and moderate limitations in the remaining three paragraph B areas of mental functioning, and that the evidence failed to establish the paragraph C criteria. (*Id.*) The ALJ explained in comprehensive detail why the evidence—psychological evaluations, psychological testing, mental status examinations, mental health treatment notes, Plaintiff's statements to providers, Plaintiff's statements in his Adult Function Report, and Plaintiff's testimony—did not satisfy any of the criteria. (*Id.*) Plaintiff challenges none of this analysis. Instead, Plaintiff's argument relies on a misreading of the ALJ's Decision. He erroneously states that the "sole basis" for the ALJ's step three conclusion was her finding that the two state agency psychological consultants' opinions were persuasive. (ECF No. 14 at 17.) He also argues those opinions are factually incorrect and the ALJ did not properly assess their persuasiveness. (*Id.* at 17-21.)

The consultants' opinions were not the sole basis for the ALJ's conclusion; the opinions are additional support for the conclusion reached after the ALJ's careful and detailed analysis of the appliable criteria. Because the premise underlying Plaintiff's argument is incorrect, Plaintiff has provided no basis on which to find reversible error in the ALJ's step three conclusion.

Moreover, Plaintiff's contention that the ALJ's evaluation of the consultants' opinions at step three was improper is unavailing.[6] In assessing medical opinions, the Commissioner must not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the applicable regulations provide that the Commissioner will evaluate medical opinions and prior administrative medical findings based on several enumerated factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's area of specialization; and (5) "other factors", including the medical source's familiarity with other evidence in the claim or understanding of Social Security Program policies, and whether new evidence came to light after the medical opinion was provided. 20 C.F.R. § 404.1530c(c). The most important factors, when determining how persuasive a medical opinion or finding is, are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2); *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022). An ALJ must explain how she considered and evaluated both the consistency and supportability factors but is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

The ALJ found the opinions persuasive because the psychologists "are familiar with Social Security disability regulations and had access to [Plaintiff's] complete medical records as they existed at the times of their reviews." (R. 23.) The ALJ further stated the consultants' opinions of no more than moderate restrictions were "fully consistent with the substantial mental evidence,

[6] The ALJ separately evaluated the psychological consultants' opinions in the RFC analysis. There, the ALJ concluded that the opinions were "generally persuasive." (R. 28-29.) Plaintiff only challenges the ALJ's evaluation at step three. (*See* ECF No. 14.)

including the overall clinical findings and signs of mental illness; the claimant's courses of and responses to mental health treatments; and the claimant's daily and other activities." (*Id.*)

Plaintiff contends the ALJ's adoption of the consultants' opinions is problematic for several reasons: (1) the consultants did not examine Plaintiff; (2) the opinions contain factual errors; (3) the ALJ did not explain why it is important that the psychologists were familiar with disability regulations; (4) the ALJ cannot rely on the psychologists' credibility statements or legal conclusions; and (5) the ALJ did not explain how the opinions are supported by and consistent with the medical evidence. (ECF No. 14 at 17-21.) None of these arguments are compelling.

First, the fact that the consultants did not examine Plaintiff did not make it improper for the ALJ to credit their opinions. An ALJ is permitted to adopt the opinions of medical consultants who have not examined the claimant. *See Bowers*, 40 F.4th at 875 (rejecting argument that it was error to adopt consultant's opinion and reject treating physician's opinion when consultant did not examine claimant).

Second, the opinions do not contain factual errors. Plaintiff insists that the consultants relied on incorrect facts because Dr. Forgus, who evaluated the record at the initial determination level, said Plaintiff's "more acute psych symptoms" occurred "in the context of struggling self-employment (owned a brewery), going to school, and a new baby."[7] (R. 65.) Plaintiff defines his "acute symptoms" as occurring when he was hospitalized in June and August 2023. However, he provides no support, factual or otherwise, for viewing the "context" of his "acute psych symptoms" as occurring only in June and August 2023. (ECF No. 14 at 18.) Plaintiff was still part-owner of a brewery when he testified in August 2024, so he was still struggling with self-

[7] At the reconsideration level, Dr. Crandall found Dr. Forgus's opinion persuasive and adopted it. (R. 74-75.)

employment during the hospitalizations. (*See* R. 44.) And on October 23, 2023, after his hospitalization, he reported feeling worry and stress "related to school," and that semester might be his last. (R. 1095.) Thus, school was still a stressor during and beyond his hospitalizations. Finally, Plaintiff himself acknowledges he had a new baby at that time. (ECF No. 14 at 18.) Dr. Forgus's assessment was not inaccurate.

Plaintiff's third and fifth arguments challenge the ALJ's persuasiveness analysis. Plaintiff suggests it was somehow improper that the ALJ noted the psychologists' familiarity with the disability regulations. Plainly, ALJs are directed to consider a medical source's understanding of Social Security regulations when assessing the persuasiveness of the source's opinions. *See* 20 C.F.R. § 404.1530c(c). That the ALJ mentioned the consultants' familiarity with the regulations was not error; it was required. And contrary to Plaintiff's suggestion, the regulations do not require ALJs to explain "which regulations were important to know or why." (ECF No. 14 at 18.)

The Court finds no deficiency in the ALJ's persuasiveness analysis. The ALJ's discussion of the treatment and examination records in the preceding paragraphs reflects that she considered supportability and consistency when she evaluated the opinions at the end of the step three analysis. The ALJ was not required to restate all that evidence again. *See Nar B. G. v. O'Malley*, No. 23-cv-2076 (JWB/JFD), 2024 WL 4132424, at *2 (D. Minn. Sept. 10, 2024) ("The discussion of the treatment and examination notes in the medical record reflects the ALJ's consideration of supportability and consistency, even though that discussion appears in a different section of the ALJ's findings."); *Troy L.M. v. Kijakazi*, No. 21-cv-199 (TNL), 2022 WL 4540107, at *11–12 (D. Minn. Sept. 28, 2022) (affirming persuasiveness analysis, though medical records were discussed elsewhere, because analysis must be read in context of entire decision).

Plaintiff also insists the ALJ failed to cite records showing "more severe symptoms," so the persuasiveness analysis is incomplete and "indistinct." (ECF No. 14 at 21.) But Plaintiff did not cite any such medical records to develop the argument, nor acknowledge that ALJs are not required to cite every piece of evidence in the record. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (citation omitted). It is not the Court's job to scour the record for evidence supporting Plaintiff's assertions.

Lastly, Plaintiff argues the ALJ should not have relied on the State agency psychologists' conclusions about his credibility (e.g., that his statements are partially consistent with the evidence) and statements of law (e.g., "the preponderance of evidence indicates that he may be somewhat restricted by symptoms" (R. 65)). (ECF No. 14 at 18.) However, the ALJ did not rely on those statements in her assessment of his mental health. Rather, the Decision reflects that the ALJ made her own independent assessment based on the objective evidence in the record. (*See, e.g.,* R. 27-28, noting that Plaintiff's MMPI-2 test profile was characterized by "overreporting and magnification of his mental symptoms" and finding the clinical evidence was "inconsistent with the alleged degree of limitation".) Thus, to the extent there was any error in the psychologists' making such statements, that error did not find its way into the ALJ's Decision.

In sum, the ALJ's step three conclusion and analysis of the agency consultants' opinions are supported by substantial evidence. The Court accordingly rejects these arguments as a basis for remand.

**B. Residual Functional Capacity**

Plaintiff makes several short, scattershot arguments attacking the ALJ's mental RFC analysis. (ECF No. 14 at 22-25.) All of these arguments miss the mark, and most of them must be rejected because they are unsupported by citations to the record or law.

RFC is defined as the most a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545. It is the claimant's burden to prove his functional limitations related to his RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004). However, the ALJ bears primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of the claimant's limitations. *Pearsall*, 274 F.3d at 1217.

1. Decision Wording

A few arguments attack the ALJ's word choices and improperly ask this Court to reweigh the evidence. Plaintiff's first argument takes a statement in the Decision out of context and fails to show error. According to Plaintiff, when the ALJ said Plaintiff's mental health treatment "remained routine and conservative" (R. 27), the ALJ ignored his two mental health hospitalizations and medical evidence of psychiatric medications and medication adjustments. (ECF No. 14 at 22.) He insists this "incorrect statement renders her decision unsupported." (*Id.*) The ALJ was not wrong. The ALJ fully acknowledged the hospitalizations and medication adjustments, but she noted that after Plaintiff's last hospitalization he had received no inpatient psychiatric treatment and no emergency mental health treatment, among other things. (*Id.*) Plaintiff's mischaracterization of the Decision fails to establish error.

Plaintiff also points out that medical notes show he had a "blunted affect" during some of his mental status examinations. (*See* R. 1385, 1971, 2105.) The ALJ characterized a blunted or flat affect as a "relatively insignificant clinical sign" among the numerous other medical records showing no "noteworthy" mental health deficits. (R. 27.) Plaintiff argues this characterization of blunted affect amounts to an impermissible inference drawn from the medical reports. (ECF No. 14 at 22-23; R. 27.) This argument is unpersuasive. Though "[a]n administrative law judge may not draw upon [her] own inferences from medical reports," *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), the ALJ here did not draw an improper inference. The ALJ cited the many records showing Plaintiff had no significant deficits in memory, cognition, concentration, intellectual functioning, concertation, thought process, and social interactions, and contrasted them with the few records noting blunted affect. (R. 27.) It is not improper lay opinion to call blunted affect "relatively insignificant" in comparison to the weight of other contrary mental health evidence. It is decidedly within an ALJ's mandate to determine RFC upon weighing all the evidence. What is more, Plaintiff supports his argument with a citation to a medical website describing "Blunted affect." Medical website definitions do not establish disability, and the website Plaintiff cites is not part of the administrative record. A claimant's disability is established by objective medical evidence in the record. 20 C.F.R. § 404.1529(a). Plaintiff points to no medical evidence suggesting blunted affect was a significant clinical sign that would call into question the ALJ's determination of his RFC. Plaintiff's argument amounts to unsupported nit-picking the ALJ's choice of adjective. *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) ("[W]e may neither pick nits nor accept an appellant's invitation to rely upon perceived inconsistencies.").

Plaintiff additionally takes issue with the ALJ's statement that the assessed RFC reduces the level of mental functioning required of Plaintiff, and that with this reduction, "the exacerbations of mental health symptomology should decrease." (R. 28.) According to Plaintiff, the inference that "exacerbations … should decrease" is speculative and unsupported, because Plaintiff experienced mental health symptoms even when he was not working and not going to school. Thus, limiting his RFC will not reduce his symptoms. (ECF No. 14 at 23.) Plaintiff's issue with this statement does not show a factual error in the ALJ's RFC analysis, does not establish a lack of substantial evidence to support it, and does not establish legal error requiring remand. The ALJ's commentary on the RFC is not the same as the RFC. Plaintiff has not met his burden to prove functional limitations related to his RFC that differ from those assessed in the Decision, *see Baldwin*, 349 F.3d at 556, and Plaintiff's argument amounts to an improper demand that the Court reweigh the evidence, *see Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) ("It is not the role of this court to reweigh the evidence presented to the ALJ.") (citation omitted).

2. Subjective Complaints

Plaintiff further argues the ALJ disregarded his subjective complaints "simply because" they were not independently verified, and that this conclusion is legal error because ALJs are required to consider subjective complaints in determining whether a claimant is disabled. (ECF No. 14 at 24.) This cursory argument is not well-taken.

Plaintiff again mischaracterizes the ALJ's Decision. The ALJ did not discount Plaintiff's statements "simply because" they were not independently verified. The ALJ said *two* factors weighed against crediting Plaintiff's allegations regarding his limited daily activities. One is that the allegedly limited activities could not "be objectively verified with any reasonable degree of

certainty." (R. 28.) The second is that, even if Plaintiff's daily activities were as limited as he alleged, it is difficult to attribute that degree of limitation to Plaintiff's medical condition, given the "relatively weak evidence" and other factors discussed throughout the Decision. (*Id.*) Plaintiff's argument thus relies on an inaccurate premise and mischaracterizes the ALJ's reasoning by overlooking the second factor. Plaintiff does not argue that the ALJ's *full* analysis of his subjective statements, which spans the RFC analysis, is erroneous. Moreover, he did not even begin to address the ALJ's analysis within the applicable legal framework. 20 C.F.R. § 404.1529 and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), are the authorities governing an ALJ's evaluation of a claimant's subjective complaints. Plaintiff failed to address these authorities in his attempt to show error in the ALJ's evaluation of his subjective complaints. It is not the Court's job to craft Plaintiff's legal arguments for him.

3. Plaintiff's Medical Source Statements

Finally, Plaintiff contends the ALJ improperly assessed his medical providers' purported opinions. Plaintiff's treating psychiatrist, Dr. Keiser, and Veterans Administration psychologist, Dr. Ankarlo, submitted medical source statements on Plaintiff's behalf. The ALJ found both unpersuasive. (R. 30.)

On June 13, 2024, Dr. Keiser submitted what the ALJ called a "boilerplate" medical source questionnaire in which she listed Plaintiff's diagnoses, symptoms, medications and medication side effects (R. 1417-18). Instead of responding to a set of questions about Plaintiff's "paragraph B" functioning (explained above), Dr. Keiser directed the reader to see Plaintiff's August 2021 neuropsychological testing. (R. 1419.) But Dr. Keiser did not conduct that test; Plaintiff's treatment relationship with Dr. Keiser began in October 2022, after the testing was completed. (*See* R. 1417, noting the date of Plaintiff's first visit with Dr. Keiser was October 14,

2022.) Dr. Keiser then checked a box that says Plaintiff had a medically documented mental disorder of at least two years duration that caused more than minimal limitation in his ability to do basic work activities, which corresponds to "paragraph C" of the mental impairment listings. (R. 1421.)

The ALJ found Dr. Keiser's "partial opinion" "unpersuasive" because she provided no function-by-function analysis or opinion regarding Plaintiff's ability to work. (R. 30; R. 1421-23.) Plaintiff argues this conclusion was "a plain violation of 20 C.F.R. 404.1520c" because the ALJ failed to evaluate Dr. Keiser's opinion in the context of his lengthy treatment history with her, and because the ALJ did not acknowledge Dr. Keiser's specialty in treating veterans. (ECF No. 14 at 24.)

The ALJ's conclusion that Dr. Keiser did not provide a function-by-function analysis or an opinion on Plaintiff's work limitations does not violate 20 C.F.R. § 404.1520c. That regulation requires an ALJ to consider several factors when evaluating a *medical opinion*. "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s)." 20 C.F.R. § 404.1513(a)(2). A medical opinion is not "judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3); *Austin v. Kijakazi*, 52 F.4th 723, 729 n.3 (8th Cir. 2022). So, when the ALJ concluded that Dr. Keiser's statements were "unpersuasive" because they were not an opinion on Plaintiff's workability, the ALJ was saying that Dr. Keiser failed to submit a medical opinion for evaluation. Notably, Plaintiff does not argue that Dr. Keiser's statements constitute a medical opinion, as that term is defined in the regulations. Thus, the ALJ was not required to conduct an evaluation of Dr. Keiser's medical source statement.

Dr. Ankarlo completed a mental disorders "Disability Benefits Questionnaire" on July 16, 2023. (R. 630-38.) He listed Plaintiff's diagnoses and symptoms and gave a summary of Plaintiff's mental health treatment history. (R. 630-35.) Dr. Ankarlo then described his observations of Plaintiff during the examination and summarized many of Plaintiff's self-reports, such as having an anxious and depressed mood and that Plaintiff continued to isolate himself and rarely did anything outside the home. (R. 635-36.) Where the questionnaire asked about the claimant's suicidal ideation, Dr. Ankarlo stated that Plaintiff reported having suicidal ideation but no suicidal intent. (R. 636.) A crucial question on the form asks responding providers to describe how a claimant's impairments impact his occupational abilities. In this case, Dr. Ankarlo responded to that question, without alteration:

> This veteran symptoms of generalized anxiety disorder and major depressive disorder have progressed to the point where he spends a significant amount of time isolating from others other than his immediate family. Due to his mental health issues it is difficult for him to engage in very many independent activities and he does rely on his wife for support whenever he is required to leave the home. The anxiety makes him very susceptible to be coming overwhelmed and even mildly stressful situations. Despite the fact that he is a co-owner of a business and would have significant flexibility in his job tasks as a co-owner he has been unable to significantly engage in his business was out the assistance of his wife.

(R. 637.)

The ALJ found Dr. Ankarlo's questionnaire "unpersuasive" because: (1) it was not a function-by-function analysis of Plaintiff's ability to work; (2) it was completed during the time Plaintiff experienced a "temporary symptomatic spike and was hospitalized"; and (3) it appeared to be based heavily on Plaintiff's subjective complaints. (R. 30.) Contrary to Plaintiff's assertions, the ALJ's conclusions are accurate: (1) Dr. Ankarlo's statements are not "about what [Plaintiff] can still do despite [his]impairment(s)," 20 C.F.R. § 404.1513(a)(2), and provide no function-by-function analysis; (2) Dr. Ankarlo answered the July 2023 questionnaire during the

period while Plaintiff was experiencing severe symptoms and was hospitalized;[8] and (3) Dr. Ankarlo described many of Plaintiff's symptoms and abilities with a qualifier such as, "The veteran reports" (*see, e.g.*, R. 636), so, Dr. Ankarlo's responses plainly appeared to be based on Plaintiff's subjective reports.

Importantly, neither medical source explained how Plaintiff's symptoms translate to work-related limitations. In other words, they did not engage in a function-by-function analysis that the ALJ could evaluate in crafting Plaintiff's RFC.[9] Plaintiff has not demonstrated that the ALJ's assessment of these opinions as "unpersuasive" is legally erroneous.

Plaintiff's haphazard brief relies heavily on factually unsupported assertions and broad misreadings of the Decision. Plaintiff is not entitled to remand by relying on mischaracterizations and half-hearted arguments. Because he has provided no basis on which to remand the Decision, and Decision is supported by substantial evidence in the record as a whole, the Court affirms it.

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**;
2. The Commissioner's Request for Relief (ECF No. 15) is **GRANTED**;
3. The Decision is **AFFRIMED**; and

[8] Plaintiff has neither argued nor shown that the ALJ's characterization of his mental health symptoms in July and August 2023 as a "temporary" spike is unsupported by the record evidence.

[9] Plaintiff faults the ALJ for noting this deficiency because, he says, in yet another inaccuracy, that the state agency consultants the ALJ found persuasive also did not conduct a function-by-function analysis. To the contrary, each of the state agency consultants did, in fact, engage in a function-by-function analysis. (*See* R. 62-65, 68-69, 73-75, 77-79, initial and reconsideration determinations.)

4. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 25, 2026

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge